IN THE UNITED STATES COURT OF APPEALS FOR THE
SEVENTH CIRCUIT
DOCKET NUMBER **23 CV 02408**

_____

MICHAEL F. HENRY,

Plaintiff-Appellant

v.

Mary Ellen Coughlan Et Al

Defendant-Appellee

_____

On Appeal from the United States District Court
For the CENTRAL DISTRICT OF ILLINOIS
Docket Number
**22 CV 03239**

_____

BRIEF OF APPELLANT MICHAEL F. HENRY

Michael F. Henry
13233 Bundoran Ct
Orland Park, Illinois 60462
Telephone 708-446-4416

U.S.C.A. – 7th Circuit
RECEIVED
AUG 24 2023 SK

IN THE UNITED STATES COURT OF APPEALS FOR THE

SEVENTH CIRCUIT DOCKET
NUMBER 23- cv- 02408

_____

MICHAEL F. HENRY,

Plaintiff-Appellant

v.

MARY ELLEN COUGHLAN
Et Al

Defendant-Appellee

_____

On Appeal from the United States District Court
for the CENTRAL DISTRICT OF ILLINOIS
Docket Number
22 CV 03239

_____

BRIEF OF APPELLANT MICHAEL F. HENRY

Michael F. Henry
13233 Bundoran Ct
Orland Park, Illinois 60462
Telephone 708-446-4416

i

# IN THE UNITED STATES COURT OF APPEALS FOR THE

## SEVENTH CIRCUIT DOCKET
## NUMBER 23- cv- 02408

---

### MICHAEL F. HENRY,

#### Plaintiff-Appellant

#### v.

### Mary Ellen Coughlan  et al, Defendant-Appellee

---

On Appeal from the United States District Court
for the CENTRAL DISTRICT OF ILLINOIS
Docket Number
22 CV 03239

Case: 23-2408          Document: 6          Filed: 08/24/2023          Pages: 57

# STATEMENT OF JURISDICTION

APPELLANT, Michael F. Henry, appeals a final judgment based on a

Dismissal from the United States District Court for the Central District of

Illinois, the Honorable Judge Colleen R. Lawless, presiding, Dismissed the

Case for the Court Lacking Jurisdiction

| 06/22/2023 | 10 | ORDER AND OPINION entered by Judge Colleen R. Lawless on 6/22/2023. Granting 6 Motion to Dismiss for Lack of Jurisdiction. SEE WRITTEN ORDER. (HS) (Entered: 06/22/2023) |

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS…………….   i

APPELLATE JURISDICTION    ………………………   iii

ISSUES PRESENTED FOR REVIEW……………………   1

ARGUMENT AND THE LAW……………………………   13

IN CONCLUSION – RELIEF SOUGHT    …………………  27

CERTIFICATION OF COMPLIANCE RULE 32…..………….29

CERTIFICATE OF COMPLIANCE TYPEST AND COUNT.  30

CERTIFICATE OF COMPLIANCE RULE 30(d)…….     31

SHORT APPENDIX        ……………………….     32

# INDEX OF AUTHORITIES

## UNITED STATES CONSTITUTION

4th Procedural and Substantive Due
Process...............................................3,4,5,6,7,8,13,14,15

## CASES

Kunkel v. Walton, 179 Ill. 2d 519, 528 (1998)................................1,8

Kaull v. Kaull, 2014 IL App (2d) 130175, 33. .............................. 1,8

FACEBOOK, INC. v. DUGUID   S. CT   19-511................................1

Foman v. Davis, 371 U.S. 178, 182 (1962)................................2

Scheurich v. Champaign Cty Sheriff's Office,
2017 U.S. Dist. LEXIS 194376..........................................2

Geier v. Missouri Ethics Commission,
715 F.3d 674, 678 (8th Cir. 2013)........................................2

Bruske v. Arnold, 44 Ill. 2d 132, 135 (1969)..............................8

*Rooker v Fidelity Trust Company* 263 US 413, 415-416 (1923).....................13

*Sykes vs Cook County Circuit Court Prob. Div* 837, F.3d 736,741 (7th Circuit 2016)...13

Village of Orland Park vs Michael Henry et al  2020 M5 000698 Cook County.........15

Village of Orland Park Vs Jay Pritzer  Northern District of Illinois 20-cv-03528........5

Rankin v. Howard, (1980) 633 F.2d 844, cert den.
          Zeller v. Rankin, 101 S.Ct. 2020, 451 U.S. 939, 68 L.Ed 2d
326.  ................17

Davis v. Burris, 51 Ariz. 220, 75 P.2d 689 (1938)..........................17

(Meyer v. Portfolio Recovery Assocs., LLC(9th Cir. 2012) 707 F.3d 1036, 1043
          (citing47 U.S.C. §
227(b)(1).).....................................................18

(Chesbro v. Best Buy Stores, L.P. (9th Cir. 2012) 705 F.3d913.)..........................20

*Perez v. Quicken Loans*, No. 19-cv-2072,
                    2020 U.S. Dist. LEXIS 53476 (N.D. Ill. Mar. 27.
2020). ...........................20

*Eric Caruso v. Cavalry Portfolio SVCS et al.,* 2019 U.S. Dist. LEXIS 169377,
              Case No.:19-CV-1224-CAB-AHG,
............................................................21

**Ewing v. Encor Solar, LLC,** **No. 18-2247, 2019 WL 277386**
                **(S.D. Cal. Jan. 22,**
**2019)...........................................................22**


## STATUES and CFR AND ILLINOIS LAW and DOCTORINES

Fruit of the Poisonous Tree Doctrine...................................................6

Younger Abstention Doctrine.........................................................2

42 U.S. Code § 1983...................................................................7

47 U.S. Code § 227 ...........................................................2,4,13,17,18,19,21,22


(47 C.F.R. § 4.1200(f)(1).)...........................................................19,20


 (47C.F.R. § 64.1200(f)(12).)..........................................................20

Federal Rules of Civil Procedure.....................................................21

**Illinois House Bill** 3062.............................................................4

 70 ILCS 205/4       ....................................................12

Illinois Rules of Civil Procedure

**RULE 3.1: MERITORIOUS CLAIMS AND CONTENTIONS............................1**

# CITATIONS

*Montanez v. Future Vision Brain Bank*, Civil Action No. 20-cv-02959-CMA-MEH, 2021 U.S. Dist. LEXIS 67091 (D. Col. April 7, 2021)(allowing ATDS allegations to survive the pleadings stage);

- *McEwen v. Nra of Am. & Infocision*, No. 2:20-cv-00153-LEN, 2021 U.S. Dist. LEXISUnited (D. Me. April 14, 2021)(ruling ATDS must make "use" of R&SNG, not just have capacity to do so);
- *Camunas v. Nat'l Republican Senatorial Comm.*, CIVIL ACTION NO. 21-1005, 2021 U.S. Dist. LEXIS 100125 (E.D. Pa. May 26, 2021)(allegations system "calls phone numbers from a stored list using a random or sequential number generator to select those phone numbers" were insufficient to state a claim without more);
- *Barnett v. Bank of Am., N.A.*, 2021 U.S. Dist. LEXIS 101171 (W.D.N.C. May 28, 2021)(Predictive dialer not an ATDS due to lack of evidence of r&sng);
- *Timms v. Usaa Fed. Sav. Bank*, C/A No. 3:18-cv-01495-SAL, 2021 U.S. Dist. LEXIS 108083 (D.S.C. June 9, 2021)(Aspect predictive dialer not an ATDS. No evidence of R&SNG usage. fn7 limited to circumstances where R&SNG used to determine number sequence);
- *Carl v. First Nat'l Bank of Omaha*, Docket no. 2:19-cv-00504-GZS, 2021 U.S. Dist. LEXIS 111889 (D Me. June 15, 2021)(LiveVox dialing system may be an ATDS even post-*Facebook* due to FN 7);
- *Atkinson v. Pro Custom Solar Lcc*, CIVIL NO. SA-21-CV-178-OLG, 2021 U.S. Dist. LEXIS 112396 (W.D. Tex. June 16, 2021)(ATDS allegations survive the pleadings stage where present use of R&SNG to determine dial sequence alleged);
- *Watts v. Emergency Twenty Four*, No. 20-cv-1820, 2021 U.S. Dist. LEXIS 115053 (N.D. Ill. June 21, 2021)(Motion to dismiss granted where allegations demonstrated calls at issue were triggered by alarms and not called as a result of an R&SNG);
- *Hufnus v DoNotPay*, Case No. 20-cv-08701, Doc. No. __ (N.D. Cal. June 24, 2021)(System that called from list of customers not an ATDS because list was not randomly dialed; FN7 only applies where random numbers are called);
- *Gross v. Gg Homes*, Case No. 3:21-cv-00271-DMS-BGS, 2021 U.S. Dist. LEXIS 127596 (S.D. Cal. July 8, 2021)(Court holds *Facebook* irrelevant at pleadings stage; holds allegations of automatic template texts sufficient to state a claim); *reconsidered Gross v. Gg Homes, Case No. 3:21-cv-00271-DMS-BGS, 2021 U.S. Dist. LEXIS 198339 (S.D. Cal. October 14, 2021)(Facebook* is relevant at the pleadings stage after all and allegations of curated text messages do not state a claim because not random);
- *Callier*, EP-20-CV-00304-KC, 2021 U.S. Dist. LEXIS 126769 (W.D. Tex. May 10, 2021)(allegations of a pause upon receipt of unsolicited calls sufficient to state ATDS claim post-*Facebook*);
- *Barry v. Ally Fin.*, Case No. 20-12378, 2021 U.S. Dist. LEXIS 129573 (E.D. Mich. July 13, 2021)(Motion to dismiss granted as to targeted collection calls. Facebook requires usage of R&SNG, not just capacity. FN7 only applies to lists of random numbers);

- *Miles v. Medicredit*, Case No. 20-cv-01186, Doc. No. 53 (E.D. Mo. July 14, 2021)(Following *Gross* and holding that *Facebook* not pertinent at pleadings stage);
- *Libby v. Nat'l Republican Senatorial Comm.*, No. 5:21-CV-197-DAE, 2021 U.S. Dist. LEXIS 140103 (W.D. Tex. July 27, 2021)(Allegations of generic campaign texts sufficient to plead ATDS usage);
- *Jance v. Homerun Offer LLC*, No. CV-20-00482-TUC-JGZ, 2021 U.S. Dist. LEXIS 143145 (D. Ariz. July 29, 2021)(pause allegations coupled with lack of consent and general marketing content sufficient to allege ATDS usage at the pleadings stage);
- *Borden v. Efinancial, LLC*, No. C19-1430JLR, 2021 U.S. Dist. LEXIS 153086 (W.D. Wash. Aug. 13, 2021)(Motion to dismiss granted. FN7 only applies to lists of random numbers);
- *Garner v. Allstate Ins. Co.*, No. 20 C 4693, 2021 U.S. Dist. LEXIS 163121 (N.D. Ill. August 30, 2021)(allegations of predictive dialer usage consistent with ATDS pleading where marketing calls were made using spoofed numbers);
- *Grome v. Usaa Sav. Bank*, 4:19-CV-3080, 2021 U.S. Dist. LEXIS 164255 (D. Ne. August 31, 2021)(Aspect not an ATDS as no present capacity to use an R&SNG to store or produce numbers. Capacity limited to present capacity);
- *Franco v. Alorica Inc.*, No. 2:20-CV-05035-DOC-(KESx), 2021 U.S. Dist. LEXIS 164438 (C.D. Cal. July 27, 2021)(Debt collection calls cannot trigger TCPA since calls not made at random);
- *Tehrani v. Joie De Vivre Hospitality, LLC*, Case No. 19-cv-08168-EMC, 2021 U.S. Dist. LEXIS 165392 (N.D. Cal. August 31, 2021)(only the generation of *phone numbers* using an R&SNG triggers the TCPA);
- *Laguardia v. Designer Brands*, Case No. 2:20-cv-2311, 2021 U.S. Dist. LEXIS 170704 (S.D. Oh. September 9, 2021)(ATDS must produce phone numbers using an R&SNG. Use of a number generator to create identification numbers respecting text message notifications does not trigger the TCPA);
- *Brickman v. Facebook, Inc.*, Case No. 16-cv-00751-WHO, 2021 U.S. Dist. LEXIS 175700 (N.D. Cal. September 15, 2021)(Even if the text sequence were determined using an R&SNG that is not enough—only the use of an R&SNG to generate phone numbers is sufficient to trigger TCPA);
- *Jovanovic v. Srp Invs. Llc*, No. CV-21-00393-PHX-JJT, 2021 U.S. Dist. LEXIS 175631 (D. Az. September 14, 2021)Receipt of a personalized text message from a long code is inconsistent with ATDS usage);
- *Poonja*,, Case No. 20-cv-4388, 2021 U.S. Dist. LEXIS 186809 (N.D. Ill. Sept. 29, 2021)(Presence of "stop" instruction in generic text from shortcode sufficient to survive pleadings stage post *Facebook);*
- *Smith v. Direct Bldg. Supplies*, CIVIL ACTION No. 20-3583, 2021 U.S. Dist. LEXIS 193657 (E.D. Pa. Oct. 7, 2021)(click and pause allegations sufficient to allege ATDS claim against caller with whom plaintiff had no previous relationship);
- *Delgado v. Pro Custom Sollar Llc*, CAUSE NO. 1:21-CV-251-LY, 2021 U.S. Dist. LEXIS 224397 (W.D. Tex. Nov. 22, 2021)(Case holds allegations of predictive dialer usage to send cold call solicitation calls sufficient to state a claim under the TCPA);

- *Macdonald v. Brian Gubernick Pllc,* No. CV-20-00138-PHX-SMB, 2021 U.S. Dist. LEXIS 216788 (D. Az. November 8, 2021)(Court accepts FN7 allegations at pleadings stage; Mojo power dialer potential ATDS);
- *Cole v. Sierra Pac. Mortg. Co.,* Case No. 18-cv-01692-JCS, 2021 U.S. Dist. LEXIS 239792 (N.D. Cal. December 15, 2021)(Fn7 is just dicta. ATDS must generate random or sequential TELEPHONE numbers);
- *Pascal v. Concentra, Inc.,* Case No. 19-cv-02559-JCS, 2021 U.S. Dist. LEXIS 239583 (N.D. Cal. December 14, 2021)(Textedly system not an ATDS at pleadings stage. After *Facebook* only random-generated phone numbers qualify);
- *Raphael Aus. V. Alorica, Inc.,* 2021 U.S. Dist. LEXIS 240677 (C.D. Dec. 16, 2021)(Motion to dismiss granted. Use of an RoSNG to populate a list triggers TCPA, use of RoSNG to determine dialing sequence does not);
- *McEwen v. Nra of Am. & Infocision,* No. 2:20-cv-00153-LEW, 2021 U.S. Dist. LEXIS 242273 (D. Me. December 20, 2021)(Proposed ATDS amendment not futile. Narrow read: use of RoSNG to determine dialing sequence triggers TCPA. Broad read: anytime algorithm determines order system is ATDS);
- *Garcia v. Case No. Pro Custom Solar Llc,* 4:21-CV-00392, 2022 U.S. Dist. LEXIS 4445 (E.D. Tex. January 10, 2022)(Click and pause allegations sufficient to survive the pleadings stage even post-*Facebook);*
- *Lauren Cross.,* Case No. 1:20-cv-01047, 2022 U.S. Dist. LEXIS 10676 (W.D. Ark. January 20, 2022)(Only calls to randomly generated telephone numbers trigger the TCPA post-*Facebook);*
- *Barnett v. First Nat'l Bank of Omaha,* Civil Action No. 3:20-cv-337-CHB, 2022 U.S. Dist. LEXIS 37563 (W.D. Ky. March 3, 2022)(MSJ granted to defendant following *Barry.* Only randomly or sequentially generated phone numbers trigger ATDS post Facebook);
- *Landy v. Natural Power Sources,* Civil Action No.: 3:21 -cv-00425-PGS-TJB, 2022 U.S. Dist. LEXIS 46534 (D. N.J. Mar. 14, 2022)(Click and pause allegations sufficient to survive pleadings stage);
- Niemczyk v. Pro Custom Solar LLC, Civil Action No.: 19-7846 (ES) (MAH), 2022 U.S. Dist. LEXIS 54026 (D. N.J. March 25, 2022)(Allegations of predictive dialer usage sufficient to establish ATDS usage at the pleadings stage);
- *Beal v. Outfield Brew House,* No. 20-1961, No. 20-3581, 2022 U.S. App. LEXIS 7748 (8th Cir. March 24, 2022)(Using a randomizer to determine dial sequence does not amount to "producing" numbers to be dialed. Court does not address "storage");
- *Jessica DeMesa, v. Treasure Island, LLC,* No. 2:18-cv-02007-JAD-NJK (D. Nv. 06/01/2022)(Motion to dismiss granted. AI text system not an ATDS because it does not generate telephone numbers to be dialed);
- *Mina v. Red Robin,* 2022 WL 2105897 (D. Colo. June 10, 2022)(Motion to dismiss granted. System not an ATDS unless it randomly generates telephone numbers. FN7 limited to such systems);
- *Soliman v. Subway* 2022 WL 2802347 (D. Conn. July 18, 2022)(System must randomly generate telephone numbers to qualify as ATDS);

- *Jiminez v. Credit One Bank, N.A., Nco Fin. Sys.*, No. 17 CV 2844-LTS-JLC, 2022 U.S. Dist. LEXIS 179434 (S.D.N.Y. Sept. 30, 2022)(Following *Panzarella* and holding only systems that actually USE randomizer to place calls trigger TCPA);
- *Allison v. Wells Fargo*, 2022 WL 10756885 (S.D. Cal. Oct. 18, 2022)(Motion to dismiss granted to Defendant. Implausible a debt collector would randomly generate phone numbers to collect debts);
- *Borden v. Efinancial, LLC*, 2022 WL 16955661 (9th Cir. Nov. 16, 2022)(holding a system must generate random telephone numbers to be an ATDS);
- *Bank v. Digital Media Solutions, Inc.* Case No. 22-cv-293, 2023 WL 1766210 (E.D.N.Y. Feb. 3, 2023)(allegations of generic marketing messages sufficient to survive pleadings stage in ATDS suit);
- Cupp v. First National Collection Bureau, Inc., No. C 22-08112 2023 WL 2311967 (N.D. Cal. Feb. 28, 2023)(allegations of high volume of debt collection text messages sufficient to survive pleadings stage.)

## Issue I

1. **The State of Illinois systematically violates the United States Constitution. The facts are clear that the Supreme Court of the United States has Final ruling and authority of law.** Under the Illinois Constitution, the Illinois Supreme Court "retains primary constitutional authority over court procedure." Kunkel v. Walton, 179 Ill. 2d 519, 528 (1998). Thus, the proper method for challenging the constitutionality of discovery orders is through the Illinois Appellate process. See Kaull v. Kaull, 2014 IL App (2d) 130175, 33. This is blatantly false and the laws are in plain error. If the United States Supreme Court issues a ruling the States must by law immediately adopt the ruling as the law of the land. In this case this is in direct conflict with the State of Illinois rules of Civil procedure. The United States Supreme Court issued a ruling that Invalidated the Orland Park Lawsuit in this case FACEBOOK, INC. v. DUGUID ET AL. CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT No. 19–511. Argued December 8, 2020—Decided April 1, 2021.

2. **Plaintiff Henry presented this to the Judge at that time Judge McHugh, and presented the same documents to Orland Parks Attorney Howard Jablecki. In Open court, while the Judge appeared to be under the influence of Alcohol, Jablecki argued that the Supreme Court ruling didn't matter and under Illinois Rules of Civil Procedure with Discovery in process, a Motion to Dismiss cannot be presented in State Court until discovery is Complete. The Judge refused to review the Motion and the Litigation. Was this a bribe Talking, a Drunk Judge?**

3. **What is clear is Jablecki took advantage of an incompetent Judge and Violated the Illinois Rules of Professional Conduct - RULE 3.1: MERITORIOUS CLAIMS AND CONTENTIONS**
   **A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good-faith argument for an extension, modification or reversal of existing law. A lawyer for the defendant in a criminal proceeding, or the respondent in a proceeding that could result in incarceration, may nevertheless so defend the proceeding as to require that every element of the case be established.**

1

4. **This court can simply read the underlying Litigation and clearly see nowhere does the Suit make any reference to any auto dialer as required under Federal Law to initiate a suit under the TCPA 47 U.S.C 227 and further allow a Federal Court to have Jurisdiction in Federal Court as required under the United States Constitution.**

5. **It does establish that Corruption is rampant in Cook County and the Illinois rules of Civil procedure Violate Federal law and its discovery rules are Unconstitutional when the Supreme Court of the United States issues a ruling that clearly establishes that State of Illinois litigation making claims under Federal law have no basis to move forward.**

### Issue 2 Younger incorrectly Applied

6. The Younger Abstention Doctrine was improperly applied by this court the Doctrine does not prohibit the Federal Courts from intervening the Court made it Clear it is Discouraged. The district court has a Duty to intervene when bribes and public corruption of the Judiciary cause the Violation of the 4th amendment of the United States Constitution.

7. The Younger abstention Doctrine is Illegal when bribery and Violations of the United States Constitution Occur and the Cases that rely on this ruling are unconstitutional at their face. See Foman v. Davis, 371 U.S. 178, 182 (1962); Scheurich v. Champaign Cty Sheriff's Office, 2017 U.S. Dist. LEXIS 194376. In the similar case of Geier v. Missouri Ethics Commission, 715 F.3d 674, 678 (8th Cir. 2013), the District Court dismissed the entire action based on the younger abstention doctrine. And the 7th Circuit committed an error with its ruling in Remmer Vs Burlington when bribery causes the Local Illinois Courts to Violate and perform **an unreasonable search and seizure, as it is in violation of the Fourth Amendment**, which aims to protect individuals' reasonable expectation of privacy against government officers. The facts are clear the Village of Orland Park and its Attorney filed a fabricated lawsuit, Plaintiff Henry refused to pay a bribe to Judge Murphy, in all likelihood Howard Jablecki did based on the underlying pleadings failure to follow pleading guidelines on TCPA case and hundreds of Court Rulings. So, a government entity is very possibly using a bribe to review private records, phone or email conversations without probable cause based on a bribe. In the alternative Judge Murphy is so incompetent he is unfit to be on the bench and clearly establishes that Illinois State Court judges are unfit to rule or adjudicate Federal laws and follow pleading standards and Guidelines and establishes the validity of Issue 3 Raised below in this appeal.

2

## Issue 3 Due Process and 4th Amendment

8. The State of Illinois has openly admitted the incompetence and Misconduct and Flat-out Judicial Corruption of its Local Judges, by its own legislation and its Failure to Police and remove corrupt, stupid or bribable Judges from its Judiciary. In order to protect itself from its own Judicial corruption the State has Started passing laws and restrictions on where suits can be filed when the State is Defendant. This is an open admission by the State of Illinois that's its Judicial branch fails to police, sanction and remove stupid, corrupt and incompetent Judges and this is an affront to the United States Constitution and Due Process.

9. **The State of Illinois has legislated that 7 Judges in Sangamon County Illinois and less than 30 Judges in Cook County are intelligent enough to hear complex State Issues. Yet allows even more complex Federal cases to be assigned to Judges deemed unfit by the State Legislature to handle complex Legal issues. So, with approximately 1100 Circuit Judges in the state of Illinois 37 Judges are deemed by the State of Illinois as Intelligent enough to do complex litigation**

10. In the alternative all Federal statues are unconstitutional when lawyers attempt to use them in States Courts in Illinois due to the Corruption of the Illinois Judiciary.

11. What is clear is the underlying State Court Judges, Murphy, and McHugh, have been blocked by Legislative degree and removed from any chance to hear or rule on complex State Litigation.

12. It is appalling that the Federal Courts think that State Court judges like Murphy and McHugh are fit to handle complex Federal regulations and laws with specific pleading requirements when the State that employes them openly admits they are unfit for this task dealing with State laws.

3

**Issue 4 Due Process Unfit Judiciary**

13. The concept of Due process and equal protection are void in the State of Illinois with under 37 Judges in a state with 13 million deemed intelligent enough, competent enough and honest enough to handle complex litigation that Federal Courts face on a daily basis. This Court needs to look at the underlying case and see that an Injunction was asked for yet Jablecki refused an Initial hearing on the exact issue and instead started the Illegal discovery process. Had a hearing been held then all of the failures of the pleadings would be again be presented to the Court. This Court is aware that allegation of a Bribe solicitation by Murphys "people" was refused. Nowhere does Jablecki mention that in all likelihood he received the same solicitation, failed to report it or in true Cook County Corruption he actually paid it. But this would explain the Failure to dismiss and the failure to have a hearing on an Injunction.

14. **All injunctions, whether preliminary or permanent, must meet the irreparable injury rule**. To meet this rule, the Plaintiff must establish that, unless the Defendant is ordered to cease the objectionable conduct, the Plaintiff will suffer irreparable damages. The Underlying pleading does not meet one of the thresholds yet the Cook County Court did not hold a hearing. The **TCPA 47 U.S.C 227** litigation itself clearly establishes that injury has a repairable solution and damages clearly established under State and Federal law. Nothing about a supposed robocall is irreparable and it is standard litigation that the Federal Courts have adjudicated hundred thousand of times a year.

    This court at the very least should suspend Klein Thorpe and Jenkins Lawyers, Howard Jablecki and Dennis Walsh from practicing in front of the Federal bar based on its abuse of venue shopping and the wholesale violation of Federal Pleading Guidelines until a proper investigation is performed of the Bribery, Kickbacks and abuse of Federal laws.

15. Gov. JB Pritzker signed a bill into law that would limit lawsuits challenging the state constitution to be brought only in either cook or Sangamon Counties.

16. The amendment to House Bill 3062 makes the counties that are home to Springfield and Chicago the only places that the state government will hear arguments that it violated the constitution after two high-profile cases — a

4

challenge to Illinois' no-cash bail law and its semi-automatic gun ban — were filed in Kankakee County and Macon County.

17. Sen. Don Harmon (D-Oak Park) said his bill was intended to stop favorable "venue shopping" for lawsuits and would still allow individuals to bring cases against the state in local courts, but not cases that seek to overturn state law.

18. In This Case Judge Murphy was Previously a Chicago Alderman who has been under investigation for Bribery while an alderman and public corruption with FBI files. Judge McHugh has a history of alcohol abuse and has been visibly impaired in several court hearings. Defendant Henry while present in Court heard police officers of Cook County debating on if she would be sober on hearing dates.

19. This case shows a State Court Judge soliciting a bribe from the Defendant, and leads to the suspicion the same bribe was offered to the Plaintiffs' Attorneys. Howard Jablecki and his firm have been bribing Orland Parks Mayor Keith Pekau with cash contributions, trips and other free services that it then Bills to the Taxpayers of Orland Park. This firm has billed in excess of 300 thousand dollars for this litigation to the Taxpayers of Orland Park and Kicked back 10 percent to Mayor Keith Pekau. This same law firm Billed 200 thousand dollars when Pekau used the Village as a Political stunt to sue the State of Illinois during the pandemic. Northern District of Illinois No. 20-cv-03528

20. VILLAGE OF ORLAND PARK, an Illinois home-rule municipal corporation, et al., Plaintiffs, v. Jay Robert PRITZKER, Governor of the State of Illinois, in his official capacity, Defendant. Lance C. Malina, Howard C. Jablecki, John A. Wall, Klein, Thorpe & Jenkins, Ltd., Chicago, IL, for Plaintiffs.

21. The wholesale abusive of the Judicial Process for Pekau to solicit Contributions and to expend over a half a million Dollars on Fabricated lawsuits garnering sympathy and he uses it as a Campaign Donation tool, he has received personal, 120 Thousand dollars of "Business Consulting Contracts paid to his business and Political contributions in excess of 200 thousand dollars is a Direct Violation of Federal law and provides for the wholesale violation of the 4th amendment of the United States Constitution and Procedural and Substantive Due Process of the United States Constitution. Due process of law involves two types of processes:

5

(a) **procedural due process – Is the process fair?** and (b) **substantive due process** - Does the government have the right to bring the action in the first place?

### ISSUE 5 – The State Law Claim is Void if no Robocall Occurred and The Courts do Have Jurisdiction to Rule on the Validity of a call under Federal Law

22. A State lawsuit invoking Federal laws can not alter the substantive pleading requirements as in this underlying case in order to State a Federal Claim. And this court cannot say it lacks jurisdiction because of the State Law Claims and the entire State Law Claims are null and void and based solely on the Claim that the Defendant Made a Robocall or Knows who made a Robocall. Without a Robocall call occurring or proof that it occurred and an actual victim who is a resident of Orland Park the State law Claims are also unfounded fabricated and falsified by Howard Jablecki. The Courts must look at the fruit of the poisonous tree doctrine is **a rule that makes evidence that was obtained illegally inadmissible in court**. It was established in 1920 and acts to prevent law enforcement agencies from using illegal methods of gathering evidence.

23. This entire lawsuit State and Federal claims establish No Victims, in initial discovery the Village of Orland Park turned over 18 call dates with 8 Separate numbers and said they allegedly received Illegal calls. The Village admitted that it never talked to these people, established that they were actually residents of Orland Park, owned the telephone number the Village is claiming is the victim or anything else that establishes the right of the Village to file suit.

24. **In fact, by Googling numbers a Thomas Larney of crown Point Indiana allegedly received 6 of the 18 calls. Under what theory of any Federal or State Law is a person who resides in Crown point Indiana a Resident of Orland Park?**

25. The Court needs to look no farther that the State of Arizona and see that Pekau paid in excess of 60 thousand Dollars of Political contributions and funneled this Money to his Brother Greg Pekau. The Court will see that the exact allegations in this complaint were charges Filed against Greg Pekau in Arizona Political races. The Court will see that Greg Pekau does commercially advertise he makes Political Robocalls.

6

26. Orland Parks Attorneys used Greg and Keith Pekaus campaign tactics and this Litigation to file a baseless lawsuit against Defendant that is improperly pled to secure hundreds of thousands of Pitty based campaign Donations. The Attorneys then picked a local state court to take advantage of untrained local Judges who lack any training in Federal Law and Procedures and then on information and belief Howard Jablecki and his Firm made contributions to Judge Murphy's friend campaigns just like Pekau, and then Judge Murphy ignored Federal Law and did not dismiss the case and started Discovery.

## Issue 6 Failure of the Federal Judge to Enforce the United States Constitution

23. The District Court Judge Failed Miserably at its duty to protect and enforce the constitution. The State of Illinois and its Judiciary has a history of Corruption and Due Process Violations and the 4th amendment rights violations of its Citizen against Illegal search and seizure. The United States Constitution cannot be sacrificed in the name of State Rights. The wholesale refusal of the Judiciary to investigate Public Corruption and Rulings protecting State Court Judges of 42 U.S.C. 1983 Shows the Federal Judiciary to be biased and Guilty themselves of Public Corruption.

24. This corruption is being exposed at all levels of the Judiciary right up to Justice Clarence Thomas and Samuel Alito of the Supreme Court taking Millions of Dollars of gifts, That the Population calls Bribes.

The Federal Judiciary and its refusal to Protect the constitution show the Public the Corruption in the Federal Bar.

## Issue 7 the State Courts alcoholism – Drunk on the Bench and soliciting Bribes to fix cases and venue shopping

25. The State of Illinois has openly admitted the wholesale corruption and incompetence of its own judiciary and the illegal venue shopping just Like this case done By Howard Jablecki and the Law Firm of Klein Thorpe and Jenkins. The law firm of Klein Thorpe and Jenkins has continually bribed Orland Park

Mayor Keith Pekau, Cindy Katsenes and the People over Politics to be paid to file Bogus litigation and searches for crooked or alcoholic State Court Judges as in the instance of this case. The question to be asked here is how much were Murphy, McHugh and Cohen paid to ignore Supreme Court Rulings. The Public drunkenness of McHugh has been published in a Major Chicago Newspaper. And she has appeared multiple times in Court in recovery from "Nights Out".

The Court can look at the Campaign Donations Made to People Over Politics by Pekau after receiving "Donations" From the Firm of Klein Thorpe and Jenkins.

26. The Federal Bar cannot allow the Illinois Supreme Court to use its's Court rules to Violate the Constitution. The Illinois rules do not allow for a Motion to dismiss a case after Discovery is Started until discovery is complete and when bribery is used to move a case to discovery Stage, the Parties in the case where Bribery occurred are then subject to wholesale Violations of the United States Constitution and Court Sanctioned Violation of the Constitution.

### Issue 8 The District Courts attack on the United States Constitution

27. The Federal bar cannot allow or tolerate this affront to the 4th amendment of the United States Constitution. The District Court Judge failed to understand the word Primary vs absolute control. In multiple Federal Rulings the Courts have used Illinois Supreme Court Jurisdiction. Bruske v. Arnold, 44 Ill. 2d 132, 135 (1969). Under the Illinois Constitution, the Illinois Supreme Court "retains primary constitutional authority over court procedure." Kunkel v. Walton, 179 Ill. 2d 519, 528 (1998). Thus, the proper method for challenging the constitutionality of discovery orders is through the Illinois Appellate process. See Kaull v. Kaull, 2014 IL App (2d) 130175, 33

28. Both of these rulings illegally subject the Parties to Illegal State Court Procedures that in itself are a Violation of the Due process clause of the United States Constitution. The Court needs to read the underlying litigation and the wholesale failure of pleadings to plead any Violation under Federal Law.

29. **A Federal Court could not establish Jurisdiction of the Case and Pleadings by Orland Park under federal law and would have been immediately dismissed. If the Federal Statue deprives a Federal Court of Jurisdiction the State of Illinois cannot extend its own Jurisdiction.**

30. The Court must also look at the ultimate Authority of Rulings of the United States Supreme Court and the failure of the State of Illinois to have any rule or regulations in the discovery process to immediately adopt the ruling on open active cases and have the State Court Judge review a motion to dismiss based on the United States Supreme Court Rulings.

8

**Issue 9 The Underlying lawsuit is a Political stunt and Fund-Raising Tactic with No Basis In Law And designed to Cover up Public corruption in Orland park and the Orland Park Police Department - Unfit Judiciary**

31. Attorney Howard Jablecki lied to the Courts Fabricated this Litigation and Picked unfit Courts to keep this case on the docket. The suit asked for an Injunction and Murphy went to schedule a hearing on the Injunction then Jablecki refused a Hearing for the Injunction

32. This is designed to prevent the Village of Orland Park from getting sued for failure to report to Worth Illinois and Palos Park about Pedophilia attacks in their Villages

33. The Underlying lawsuit is a pathetic attempt of a man, Keith Pekau, who attacks women on a regular basis in Public and Private to hide his mentor, Sean Morrisons Corruption.

34. Since the Village of Orland Park filed this litigation Keith Pekau has sent out over 600 thousand emails soliciting money from his supporters based on him allegedly being attacked by Democrats and Political Opponents where Pekau is claiming Pedophilia based Robocalls and has publicly played them at Campaign donation solicitation Meetings and in over 600 thousand emails.

35. He has made in excess of 150 Robocalls to be elected.

36. The Public record shows that Pekaus Main Supporter Sean Morrison Protects pedophiles and enables pedophiles to travel and assault other victims by sending Letters written to Cook County Judges.

37. At the same time Morrison is raising Money for Pekau, The Village of Orland Park, at the Instruction of Pekau, Healy, Milani and Katsenes arraigned a no bid legal service contract to Sean Morrison's brother-in-law, Michael Vines paying him hundreds of thousands of dollars.

38. The facts are simple Sean Morrison has a history of Pool parties at his residence in Palos Park.

9

39.   Morrisons and his employees all had knowledge of pedophile activities of Anthony Martin while employed by Sean Morrison and Morrison Securities.

40.   This is disclosed in the Victim of Morrisons Pool Parties Police report of the attack by Martin of 14-year-old Girl who lives in Orland Park.

41.   At the same time Sean Morrison and Morrison Security employed Anthony Martin, and they had knowledge of his lust for underage girls, Morrison and employees of Morrison Security helped Anthony Martin get elected to be a Worth Park Commissioner, which provided him direct access to underage girls.

42.   Orland Parks Police department arrested Martin 8/21/2013 For grooming a 14-year-old Girl.

43.   In a bizarre set of events the Orland Park Police Depart arrested Martin and then did no further work on the case at the Instruction of police leadership Including Former Secret Service agent and Chief of Police Timothy McCarthy.

44.   McCarthy and the leadership of the Orland Park Police Department, knowing full well that Martin was a Commissioner for the Worth Park district, and knowing full well that the initial reported attack of the 14-year-old Girl was in Palos Park, did not notify Palos Park of pedophile-based Pool parties.

45.   What's even more bizarre, under the leadership of Timothy McCarthy, the Villager of Orland Park failed to notify Worth of its Park district Commissioners arrest for pedophilia so they could investigate and find other Victims.

46.   While Orland Park Police are covering up potential Victims in Worth and Palos Park, Cook County Commissioner Sean Morrison wrote a letter to a Cook County Judge. Based on this letter the Judge altered Anthony Martins travel restrictions for bail on Pedophilia charges and allowed him to travel for work out of State.

47.   Immediately after this modification Anthony Martin traveled to Colorado and attempted to assault another young girl and was arrested and charged.

48. All of this information was available the Orland Park Police Department and the Cook County States Attorney's office. Yet again Timothy McCarthy and his leadership decided not to notify Palos Park and further investigate Sean Morrison and his "Pool Parties".

49. In an even more bizarre turn of events none of them notified the Worth Police Department or the Worth Park District that a Park Commissioner, who had access to children ages 2 to 17, who were exposed to a Pedophile. How many more people did Martin Attack in Worth Illinois at the Park District? How many more Children did Martin attack at Sean Morrisons home in Palos Park

50. Pekau and his brother Greg Pekau have a history of Attack and false robocalls to garner campaign contributions and have used them to thwart investigations into damaging events.

51. The evidence above is a clear path for any rational Court to ascertain that the Robocalls are in fact made by Keith Pekau and his brother Greg to garner sympathy and secure campaign donations. At the same time to cover up the liability of Orland Park and its Police Department for a massive lawsuit for its failure to protect all the potential victims of Worth Park District and Palos Park children at Sean Morrison house.

52. The robocalls are specifically designed by Keith Pekau to protect the Head of the Cook County republican Party, Sean Morrison who has helped secure Keith Pekau 1.4 million in campaign donations in his Failed bid for Congress.

    Morrison has also helped Pekau raise over 500 thousand Dollars for his various local elections and his People Over Politics Party.

53. A federal Court should absolutely be investigating Multi State Pedophilia, and the Judges named in this Litigation have knowledge of Pedophilia, and chose not to protect Children in Worth Illinois and Palos Park, Illinois.

54. This alone demands the Intervention of the Federal Court to ascertain the extent of how many children in Worth Illinois and Palos Park were sexually assaulted by Anthony Martin at Sean Morrisons home and Worth Park District Facilities.

56. What is abundantly clear is Attorney Howard Jablecki, Dennis Walsh and the Law Firm of Klein, Thorpe and Jenkins were aware of the Pedophilia and filed the underlying lawsuit to cover up the multi-Million-dollar liability incurred by the Village of Orland Park based on Timothy McCarthys actions while Chief of Police.

Case: 23-2408    Document: 6    Filed: 08/24/2023    Pages: 57

57. At the very least this Court has a Duty to demand a full investigation of the Orland Park Police Department, by the FBI and the US Attorney's office and Sean Morrison, they should contact every Child enrolled at the Worth Park District programs, who were exposed to Martin. And children who attended Pool Parties at Morrisons House in Palos Park, when Martin was a member of the Board of Commissioners of the Worth Park District, to ascertain the extent of his potential sexual assaults. As these children were aged 2 to 17 when Martin was elected in 2012/2013 they are still minors and deserve protection and prosecution of Martin and Morrison for their potential sexual assaults.

58. The question in this appeal is do the Judges of the 7th Circuit want to protect Children or Fellow Members of the Judiciary. The Conduct of the Judges in the underlying lawsuit and their failure to intervene in Pedophilia attacks in various suburbs is a Glaring example of unfit State Court Judges who certainly cannot be trusted to Adjudicate lawsuits based on Federal law and this was addressed by the State of Illinoi admitting that 37 Judges are the only competent Judges in the State of Illinois to handle Complex Litigation.

**Issue 10 The District Court Committed plain error by not allowing an amended complaint based on New Illinois Law and Impaired Judiciary. The amended complaint would have detailed the Corruption of Attorneys Howard Jablecki and the pedophilia Cover up by Orland Park, Keith Pekau, Timothy McCarthy and Dennis Walsh**

# The Argument and Law

59.     The wholesale Claim that because the State Court Judges are improperly Trained, Improperly Supervised or Flat biased and/or corrupt as established by *Rooker v Fidelity Trust Company* 263 US 413, 415-416 (1923). *The State Courts will sometimes commit error when interpreting Federal law.* Fails to address that it is not error when a bribe occurs and receiving a bribe is not an error of law when fixing a case. *Sykes vs Cook County Circuit Court Prob. Div* 837, F.3d 736,741 (7th Circuit 2016) is also misapplied and the Seventh Circuit failed to address bribery and public corruption that is not an error of the Judicial process.

60.     The question to the Seventh Circuit is under what basis of law is Bribery an error in the Judicial Process? The next question is the District Court refused and the Seventh Circuit must review the underlying lawsuit as it failure to plead anything required by law in a **TCPA 47 U.S.C 227** Suit shows that either the Judge is incompetent or retaliated because Henry refused to pay the bribe or on the other hand shows Howard Jablecki di pay the bribe for this bizarre set of circumstances.


61.     The Younger Abstention Doctrine is unconstitutional when a government entity is using Illegal activity to secure documents without probable Cause. The Village of Orland Park falsified a lawsuit failed to detail any victim or even if it had standing to file the suit, Attorney Howard Jablecki has a long history of Lying to the Court falsify or making vague statements without any support documentation.

62.     The Younger Abstention Doctrine does not apply but even if the Court attempts to apply it, the Court failed to recognize and apply the exception to the Younger Abstention Doctrine, when Illegal search and seizures are being performed by the Village of Orland Park and violate the 4th amendment of the constitution.

63.     The Illinois Rules of Civil Procedure do not require a Judge to issue written rulings even when a question of due process and standing occur as in this case. Judge Murphy had Somone ask for a payoff, when Henry refused the Judge failed to issue a ruling and said the litigation will move forward the refusal to issue any ruling on a Motion to dismiss shows the woeful violation of Due Process in Civil Litigation allowed by Illegal Civil Rules of Illinois Procedure. The Judge denied all Motions filed by Henry Verbally in the Court room without any reason of law for the basis of the rulings.

64.     In each subsequent assignment of Judges the Failure to establish Jurisdiction and issue a written ruling as a matter of law has been used by a Crooked Attorney Howard Jablecki, He has told the Courts that the Case Must continue through discovery because Murphy denied Henrys Original Motion to dismiss based on the Court Lacking Subject matter Jurisdiction and the Failure of the Village to establish.

13

65.     The Villages own lawsuit fails to establish a prima facie case is **the establishment of a legally required rebuttable presumption**. A prima facie case is a cause of action or defense that is sufficiently established by a party's evidence to justify a verdict in his or her favor, provided such evidence is not rebutted by the other party.

66.     The Original Case Fails to list a Number who received the alleged Illegal Robocall. The Case fails to Provide the name and address of the person who received the alleged Robocall to establish if the alleged Victim even Lives in the Village of Orland Park. The Case fails to establish the day, date and time of the Illegal robocall.

67.     The Federal Courts illegally and incorrectly assume that the Illinois Appellate Court can make a ruling to correct the violation of Henrys Due process and 4th amendment rights. This case is an instant example of this incorrect assumption.

68.     There is no avenue for Plaintiff Henry to take the illegal ruling to the appellate court in Illinois when the judge refuses to issue a ruling on why the original Motion to dismiss was not granted in December 0f 2020.

69.     The Plaintiff has no right of appeal under Illinois law based of the failure of the Illinois Court System to provide any method to prevent constitutional Violations of the 4th amendment and due Process that are occurring in this case until after discovery is complete.

70.     The Plaintiffs inability under Illinois rules of Civil procedure prevent him from appealing a nonexistent ruling made when the Bribe was refused. The Court then started an Illegal discovery Process that did Violate the Due Process and 4th amendment rights granted by the United States Constitution.


71.     The failure of the Court to issue a written ruling on why it was not dismissing the case for Subject matter Jurisdiction is the basis for the Violation of the 4th amendment of the United States Constitution.

The Crooked State Court Judge Murphy, and the Public Drunk McHugh started Court Monitored illegal searches and seizes of Henrys Personal records without Probable cause and Violated the United States Constitution.

72.     The Younger Abstention Doctrine cannot be used to Violate the United States Constitution and put any US Citizen in the position of turning any books, records phone calls tax returns over without Due Process. apply as the Village of Orland Park illegally filed this suit with no Victims, and no proof that any of these robocalls occurred or were received by any Resident of the Village.

73.     This entire Lawsuit was designed to Violate Plaintiffs 4th amendment Constitutional right to Illegal search and seizure. The Village of Orland Park was in Direct contact with the Attorney General's office of the State of Illinois and were told they had no valid claim.

14

Instead of accepting this, a Fabricated lawsuit was filed in an attempt to Violate the 4th amendment of the United States Constitution harass, intimidate and illegally gain access to Michael Henrys Bank records, tax returns business records, emails and personal conversations and this constitutes Illegal search and seizure.

74.     The Solicitation of a Bribe to dismiss the case directly caused the Village of Orland Park to Illegally demand in the Discovery process without Probable causes the review of documentation or proof of any crime occurred.  The suit does in 2020 M5 000698 does not even give a day, date or time of any event that occurred and fails to name any Victim of this crime. It further fails to establish any violation of the law occurred and the Illinois Attorney General Told the Village this in emails and discussions.

The underlaying lawsuit and abuse of Federal law.

75.     The litigation in this case is a Stunning example of Illegal and fraudulent Court Filings BY Howard Jablecki.

76.     In Discovery the Village of Orland Park admitted it does not know the name and address of one person in the Village who it alleges received the Illegal Robocalls.

77.     In a list of Fabricated Phone Numbers, a Google search shows that One Number who is 6 of the 18 alleged calls Lives in Crown Point Indiana.

78.     The Village of Orland Park lied to the Court and fabricated a lawsuit and it cannot produce ONE resident by name address and Phone Number when they filed this suit.

79.     Howard Jablecki has admitted that the Village never did any research on the residents he is claiming Live in the Village and received the Calls in Order to establish Jurisdiction and this alone shows the Village has no standing.

80.     Through the Discovery Process Jablecki has told the Court that he needs to get access to Henrys business associates and email and his discovery shows this continued Illegal fishing.

81.     **Jablecki has represented 8 times in Court Hearings that if Henry Didn't Make the Robocalls then because of his FOIA request he knows who did.**

*From Paragraph 11.  In addition, Defendant HENRY has submitted a substantial number of Freedom of Information Act Requests to the Village, seeking information that subsequently becomes the subject of an illegal robocall.*

15

82.   Jablecki then lied to the Court and Defendant Henry found out that Mayor Keith Pekau receives and reviews every FOIA Request and so do the 6 Trustees Village Manager and Village assistant manager along with the Village Clerk. Along with at least 6 other people employed by the Village

83..   Jablecki then continued the Lie even though he knew full well that Mayor Keith Pekaus Brother Greg owns and operates a Political Robocall Business and Keith Pekau has used various Campaign Funds to pay companies associated with his brother in Phoenix Arizona.   Pekau campaigns have paid in excess of 60 thousand dollars to Arizona Based Robocall Service Providers.

84.   Mayor Keith Pekau uses these alleged robocalls as a tool to raise political contributions claiming he is being attacked and needs money to defend himself.

85.  This entire lawsuit is based on Illegals activities and actions Previously done by Greg Pekau in the State of Arizona

### I. Factual Background

### A. Engagement of Gregg Pekau

On information and belief, in February 2013 Gregg Pekau (or a company he controls, Copper State) was hired by a nonprofit organization or a private company to conduct "opposition research" against Scott Smith, who was then the Mayor of the City of Mesa and is now a candidate for Governor of the State of Arizona. Based on the nature of the research conducted, it is apparent that Pekaus research was conducted in anticipation of running attack ads against Mr. Smith during the 2014 gubernatorial election;

Pekau submitted numerous public records requests seeking information that could be used to paint Mr. Smith in a negative light with voters in a Republican primary election in Arizona. See, e.g.,

The public records requests were in some cases submitted in the name of Copper State, which is owned by Pekaus wife. Pekaus research was not funded by the Ducey Campaign. On information and belief, the Ducey Campaign has recently retained Pekau as the Director of Research, effectively internalizing the benefit of all the opposition research that Pekau conducted on the payroll of the nonprofit organization or private

16

company—without paying for the research from Ducey Campaign accounts.

86. Defendant Michael Henry Places the Court on Notice of the Failure of this lawsuit to meet one standard of the three-prong test required by law to establish a claim under 42.U.S.C. 227.

When a judge knows that he lacks jurisdiction, or acts in the face of clearly valid statutes expressly depriving him of jurisdiction, judicial immunity is lost. Rankin v. Howard, (1980) 633 F.2d 844, cert den. Zeller v. Rankin, 101 S.Ct. 2020, 451 U.S. 939, 68 L.Ed 2d 326.

A judge must be acting within his jurisdiction as to subject matter and person, to be entitled to immunity from civil action for his acts. Davis v. Burris, 51 Ariz. 220, 75 P.2d 689 (1938)

87. The Village of Orland Park has filed this lawsuit in an attempt to cover up the Illegal activities of the Villages Mayor Keith Pekau for using Abusive Robocalls Made by his Brother Greg Pekau to Generate support and campaign donations.



**RESEARCH AND DATA ANALYSIS**



**CAMPAIGN TEAM BUILDING**



**SMS OUTREACH**



**AUTOMATED DIALERS**



**Meet Gregg Pekau**

Greg Pekau has worked in election cycles currently 8 decades relating with Senate, Gubernatorial, Congressional, Statewide Candidate & Ballot Propositions and coalitions across the country.

88.

89. Political Robocall Restrictions

17

90. Political campaign-related autodialed or prerecorded voice calls, including autodialed live calls, autodialed texts, and prerecorded voice messages, are prohibited to cell phones, pagers or other mobile devices without the called party's prior express consent.

**91. The Three Minimum requirements and not one is met by the Orland Park Litigation.**

92. There are three elements of a TCPA claim:

93. (1) the defendant called a telephone number,

  (2) using an "automatic telephone dialing system" or an artificial or prerecorded voice message,

  (3) without the recipient's consent.

  (Meyer v. Portfolio Recovery Assocs., LLC(9th Cir. 2012) 707 F.3d 1036, 1043 (citing47 U.S.C. § 227(b)(1).)

**94. — Element One: A Call —**

95. A "call" includes a voice call, of course. But a "call" also includes text messages. Although the TCPA was enacted before text messaging existed, the FCC has determined that a text message is a "call." The scope of a "call" likely will continue to evolve as technology changes.

96. The suit must establish the owner of the line receiving the call, the Time and date of the call and the number Making the call. The suit must also establish if the Number receiving the call was a landline or Cellphone.

<strong>97. — Element Two: Autodialing —</strong>
<strong>98.</strong>

99. The second element for a TCPA plaintiff to prove is that the call was placed using an "automatic telephone dialing system" (an"autodialer"), or an artificial or prerecorded voice message. An autodialer is equipment having the "capacity to store or produce telephone numbers to be called, using a random or sequential number generator and to dial such numbers." (47 U.S.C. § 227(a)(1).

**100.    The litigation must establish how the defendant knew it received a call from an Auto dialer.**

<strong>101.        — Element Three: Consent —</strong>

102.    The third element, consent, is arguably the most complicated piece of the puzzle because the type of consent required varies depending on the type of technology used to make the call, the type of phone dialed, and the purpose of the call. The TCPA 47 U.S.C. § 227 regulates two types of technology used to make outgoing calls: calls placed by an autodialer and calls using an artificial or prerecorded voice.

103.    The type of number called is also important. Calls to residential landlines using an auto dialer but by live operators do not trigger the TCPA's  47 U.S.C. § 227 consent provisions, and are thus exempt from the consent requirements. Calls to mobile phones using an artificial/prerecorded voice message or auto dialers are regulated by the TCPA. So for calls to mobile phones, only those made by live operators that are manually dialed do not trigger the TCPA's consent requirements.

104.    Finally, the purpose of the call must be considered. There are generally two types of calls for TCPA purposes: informational and marketing.

19

"Informational" calls do not advertise goods or services, e.g., debt collection calls, survey calls, customer service calls, and appointment reminders.

105.     "Marketing" calls include calls that include or introduce an "advertisement" or constitute "telemarketing." An advertisement is "any material advertising the commercial availability or quality of any property, goods or services." (47 C.F.R. § 64.1200(f)(1).)

106.     "Telemarketing" is "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental or investment in property, goods, or services, which is transmitted to any person." (47C.F.R. § 64.1200(f)(12).) A dual-purpose call, which has both informational and marketing content, is considered a marketing call. In one case, a call about redeeming loyalty program reward points was deemed an advertisement because the call encouraged a future purchase, because the only way to redeem the points was to go to the retailer's store and purchase goods. (Chesbro v. Best Buy Stores, L.P. (9th Cir. 2012) 705 F.3d913.)

**107.     All of these factors need to be assessed to determine what type of consent is needed.**

108.     Lower court in the Seventh Circuit have recognized this reality in granting a defendant's Fed. R. Civ. P. 12(b)(6) motion to dismiss. *Perez v. Quicken Loans*, No. 19-cv-2072, 2020 U.S. Dist. LEXIS 53476 (N.D. Ill. Mar. 27. 2020). The court rightly found that, in light of *Gadelhak*, "**it is fair to conclude that the standards for pleading and proving a claim under [47 U.S.C.] section 227(b)(1)(iii) have been raised**, especially in regard to the second element," concerning a device's capacity to randomly or sequentially generate numbers.

109.     In *Perez*, Plaintiff pointed to the following in alleging that Defendant had used an ATDS when calling Plaintiff: (1) a several second pause before a live representative began to speak; (2) continued calls after Plaintiff demanded that the calls stop; and (3) the "nature" and "frequency" of Defendant's contacts. The

20

relevant at the pleadings stage after all and allegations of curated text messages do not state a claim because not random);

- *Callier*, EP-20-CV-00304-KC, 2021 U.S. Dist. LEXIS 126769 (W.D. Tex. May 10, 2021)(allegations of a pause upon receipt of unsolicited calls sufficient to state ATDS claim post-*Facebook*);
- *Barry v. Ally Fin.*, Case No. 20-12378, 2021 U.S. Dist. LEXIS 129573 (E.D. Mich. July 13, 2021)(Motion to dismiss granted as to targeted collection calls. Facebook requires usage of R&SNG, not just capacity. FN7 only applies to lists of random numbers);
- *Miles v. Medicredit*, Case No. 20-cv-01186, Doc. No. 53 (E.D. Mo. July 14, 2021)(Following *Gross* and holding that *Facebook* not pertinent at pleadings stage);
- *Libby v. Nat'l Republican Senatorial Comm.*, No. 5:21-CV-197-DAE, 2021 U.S. Dist. LEXIS 140103 (W.D. Tex. July 27, 2021)(Allegations of generic campaign texts sufficient to plead ATDS usage);
- *Jance v. Homerun Offer LLC*, No. CV-20-00482-TUC-JGZ, 2021 U.S. Dist. LEXIS 143145 (D. Ariz. July 29, 2021)(pause allegations coupled with lack of consent and general marketing content sufficient to allege ATDS usage at the pleadings stage);
- *Borden v. Efinancial, LLC*, No. C19-1430JLR, 2021 U.S. Dist. LEXIS 153086 (W.D. Wash. Aug. 13, 2021)(Motion to dismiss granted. FN7 only applies to lists of random numbers);
- *Garner v. Allstate Ins. Co.*, No. 20 C 4693, 2021 U.S. Dist. LEXIS 163121 (N.D. Ill. August 30, 2021)(allegations of predictive dialer usage consistent with ATDS pleading where marketing calls were made using spoofed numbers);
- *Grome v. Usaa Sav. Bank*, 4:19-CV-3080, 2021 U.S. Dist. LEXIS 164255 (D. Ne. August 31, 2021)(Aspect not an ATDS as no present capacity to use an R&SNG to store or produce numbers. Capacity limited to present capacity);
- *Franco v. Alorica Inc.*, No. 2:20-CV-05035-DOC-(KESx), 2021 U.S. Dist. LEXIS 164438 (C.D. Cal. July 27, 2021)(Debt collection calls cannot trigger TCPA since calls not made at random);
- *Tehrani v. Joie De Vivre Hospitality, LLC*, Case No. 19-cv-08168-EMC, 2021 U.S. Dist. LEXIS 165392 (N.D. Cal. August 31, 2021)(only the generation of *phone numbers* using an R&SNG triggers the TCPA);
- *Laguardia v. Designer Brands*, Case No. 2:20-cv-2311, 2021 U.S. Dist. LEXIS 170704 (S.D. Oh. September 9, 2021)(ATDS must produce phone numbers using an R&SNG. Use of a number generator to create identification numbers respecting text message notifications does not trigger the TCPA);
- *Brickman v. Facebook, Inc.*, Case No. 16-cv-00751-WHO, 2021 U.S. Dist. LEXIS 175700 (N.D. Cal. September 15, 2021)(Even if the text sequence were determined using an R&SNG that is not enough—only the use of an R&SNG to generate phone numbers is sufficient to trigger TCPA);
- *Jovanovic v. Srp Invs. Llc*, No. CV-21-00393-PHX-JJT, 2021 U.S. Dist. LEXIS 175631 (D. Az. September 14, 2021)Receipt of a personalized text message from a long code is inconsistent with ATDS usage);

25

- *Poonja,*, Case No. 20-cv-4388, 2021 U.S. Dist. LEXIS 186809 (N.D. Ill. Sept. 29, 2021)(Presence of "stop" instruction in generic text from shortcode sufficient to survive pleadings stage post *Facebook);*
- Smith v. Direct Bldg. Supplies, CIVIL ACTION No. 20-3583, 2021 U.S. Dist. LEXIS 193657 (E.D. Pa. Oct. 7, 2021)(click and pause allegations sufficient to allege ATDS claim against caller with whom plaintiff had no previous relationship);
- *Delgado v. Pro Custom Sollar Llc,* CAUSE NO. 1:21-CV-251-LY, 2021 U.S. Dist. LEXIS 224397 (W.D. Tex. Nov. 22, 2021)(Case holds allegations of predictive dialer usage to send cold call solicitation calls sufficient to state a claim under the TCPA);
- *Macdonald v. Brian Gubernick Pllc,* No. CV-20-00138-PHX-SMB, 2021 U.S. Dist. LEXIS 216788 (D. Az. November 8, 2021)(Court accepts FN7 allegations at pleadings stage; Mojo power dialer potential ATDS);
- *Cole v. Sierra Pac. Mortg. Co.,* Case No. 18-cv-01692-JCS, 2021 U.S. Dist. LEXIS 239792 (N.D. Cal. December 15, 2021)(Fn7 is just dicta. ATDS must generate random or sequential TELEPHONE numbers);
- *Pascal v. Concentra, Inc.,* Case No. 19-cv-02559-JCS, 2021 U.S. Dist. LEXIS 239583 (N.D. Cal. December 14, 2021)(Textedly system not an ATDS at pleadings stage. After *Facebook* only random-generated phone numbers qualify);
- *Raphael Aus. V. Alorica, Inc.,* 2021 U.S. Dist. LEXIS 240677 (C.D. Dec. 16, 2021)(Motion to dismiss granted. Use of an RoSNG to populate a list triggers TCPA, use of RoSNG to determine dialing sequence does not);
- *McEwen v. Nra of Am. & Infocision,* No. 2:20-cv-00153-LEW, 2021 U.S. Dist. LEXIS 242273 (D. Me. December 20, 2021)(Proposed ATDS amendment not futile. Narrow read: use of RoSNG to determine dialing sequence triggers TCPA. Broad read: anytime algorithm determines order system is ATDS);
- *Garcia v. Case No. Pro Custom Solar Llc,* 4:21-CV-00392, 2022 U.S. Dist. LEXIS 4445 (E.D. Tex. January 10, 2022)(Click and pause allegations sufficient to survive the pleadings stage even post-*Facebook);*
- *Lauren Cross.,* Case No. 1:20-cv-01047, 2022 U.S. Dist. LEXIS 10676 (W.D. Ark. January 20, 2022)(Only calls to randomly generated telephone numbers trigger the TCPA post-*Facebook);*
- *Barnett v. First Nat'l Bank of Omaha,* Civil Action No. 3:20-cv-337-CHB, 2022 U.S. Dist. LEXIS 37563 (W.D. Ky. March 3, 2022)(MSJ granted to defendant following *Barry.* Only randomly or sequentially generated phone numbers trigger ATDS post Facebook);
- *Landy v. Natural Power Sources,* Civil Action No.: 3:21 -cv-00425-PGS-TJB, 2022 U.S. Dist. LEXIS 46534 (D. N.J. Mar. 14, 2022)(Click and pause allegations sufficient to survive pleadings stage);
- Niemczyk v. Pro Custom Solar LLC, Civil Action No.: 19-7846 (ES) (MAH), 2022 U.S. Dist. LEXIS 54026 (D. N.J. March 25, 2022)(Allegations of predictive dialer usage sufficient to establish ATDS usage at the pleadings stage);
- *Beal v. Outfield Brew House,* No. 20-1961, No. 20-3581, 2022 U.S. App. LEXIS 7748 (8th Cir. March 24, 2022)(Using a randomizer to determine dial sequence

does not amount to "producing" numbers to be dialed. Court does not address "storage");

- *Jessica DeMesa, v. Treasure Island, LLC*, No. 2:18-cv-02007-JAD-NJK (D. Nv. 06/01/2022)(Motion to dismiss granted. AI text system not an ATDS because it does not generate telephone numbers to be dialed);
- *Mina v. Red Robin*, 2022 WL 2105897 (D. Colo. June 10, 2022)(Motion to dismiss granted. System not an ATDS unless it randomly generates telephone numbers. FN7 limited to such systems);
- *Soliman v. Subway* 2022 WL 2802347 (D. Conn. July 18, 2022)(System must randomly generate telephone numbers to qualify as ATDS);
- *Jiminez v. Credit One Bank, N.A., Nco Fin. Sys.*, No. 17 CV 2844-LTS-JLC, 2022 U.S. Dist. LEXIS 179434 (S.D.N.Y. Sept. 30, 2022)(Following *Panzarella* and holding only systems that actually USE randomizer to place calls trigger TCPA);
- *Allison v. Wells Fargo*, 2022 WL 10756885 (S.D. Cal. Oct. 18, 2022)(Motion to dismiss granted to Defendant. Implausible a debt collector would randomly generate phone numbers to collect debts);
- *Borden v. Efinancial, LLC*, 2022 WL 16955661 (9th Cir. Nov. 16, 2022)(holding a system must generate random telephone numbers to be an ATDS);
- *Bank v. Digital Media Solutions, Inc.* Case No. 22-cv-293, 2023 WL 1766210 (E.D.N.Y. Feb. 3, 2023)(allegations of generic marketing messages sufficient to survive pleadings stage in ATDS suit);
- Cupp v. First National Collection Bureau, Inc., No. C 22-08112 2023 WL 2311967 (N.D. Cal. Feb. 28, 2023)(allegations of high volume of debt collection text messages sufficient to survive pleadings stage.)

THE RELIEF AND COURT DISPOSISITION

1. This Court needs to stop the illegal Lawsuit in the State of Illinois Courts and enforce the United States Supreme Court Ruling.

2. District Court made plain errors in the refusal to allow an amended complaint that would have addressed the admission of the incompetence of the State of Illinois Judges, by the State of Illinois.

3. No Matter what this Court Does it has a Constitutional mandate to prevent Pedophilia and determine how many addition victims of sexual assaults are in Worth and Palos Park Illinois. This Court should be made aware that Sean Morrison has 2 daughters the same age as the previous sexual assault victims at Morrisons house and has a duty to ensure their safety.

4. This Court also has a Duty to issue an Order Preventing Howard Jablecki, Dennis Walsh and the Law Firm of Klein Thorpe and Jenkins from practicing law in Federal Courts based on their attempt to cover up failed sexual assault investigations by the Orland Park Police Department.

Respectfully Submitted
__/Michael Henry/_____
Michael F. Henry
13233 Bundoran Court
Orland Park, Illinois 60462
Michaelfhenry@live.com

IN THE UNITED STATES COURT OF APPEALS FOR THE
SEVENTH CIRCUIT
DOCKET NUMBER **23 CV 02408**

---

MICHAEL F. HENRY,

Plaintiff-Appellant

v.

Mary Ellen Coughlan Et Al

Defendant-Appellee

---

On Appeal from the United States District Court
For the CENTRAL DISTRICT OF ILLINOIS
Docket Number
**22 CV 03239**

CERTIFICATE OF COMPLIANCE

1.  This Brief complies with the type-volume limitation of Rule 32(c)(7)(B) of
    the Federal Rules of Appellate Procedure because, according to the "word
    count" function of Microsoft Word 365, the Brief contains 9,676 words,
    excluding the parts of the Brief exempted from the word count by Rule
    32(a)(7)(B)(iii) of the Federal Rules of Appellate Procedure.

2.  This Brief complies with the typeface requirements of Rule 32(a)(5) of the
    Federal Rules of Appellate Procedure and the typestyle requirements of

Case: 23-2408    Document: 6    Filed: 08/24/2023    Pages: 57

Circuit Rule 32 because the Brief has been prepared in a proportionally spaced

typeface using Microsoft Word 365 in 14-point Times New Roman font.

Respectfully Yours

Michael F. Henry
13233 Bundoran Court
Orland Park, Illinois 60462
708-446-4416

IN THE UNITED STATES COURT OF APPEALS FOR THE
SEVENTH CIRCUIT
DOCKET NUMBER **23 CV 02408**

---

MICHAEL F. HENRY,

Plaintiff-Appellant

v.

Mary Ellen Coughlan Et Al

Defendant-Appellee

---

On Appeal from the United States District Court
For the CENTRAL DISTRICT OF ILLINOIS
Docket Number
**22 CV 03239**

---

CERTIFICATION OF COMPLIANCE WITH FEDERAL RULE OF APPELLATE PROCEDURE 31(e)

The Undersigned, Pro Se Plaintiff-Appellant, hereby certifies that the

Digital media containing this brief has been checked by McAfee Virus scan and the disk

Contains no viruses. As required by Circuit Rule 31(e)(1), the undersigned also States

That the material found in the appendices is not available in electronic form

Dated August 23 2023

Michael F. Henry

13233 Bundoran Ct

Orland Park, Illinois 60462

Telephone 708-446-4416

Case: 23-2408          Document: 6          Filed: 08/24/2023          Pages: 57

IN THE UNITED STATES COURT OF APPEALS FOR THE
SEVENTH CIRCUIT
DOCKET NUMBER **23 CV 02408**

---

MICHAEL F. HENRY,

Plaintiff-Appellant

v.

Mary Ellen Coughlan Et Al

Defendant-Appellee

---

On Appeal from the United States District Court
For the CENTRAL DISTRICT OF ILLINOIS
Docket Number
**22 CV**
**03239**

---

INDEX TO SHORT APPENDIX OF PLAINTIFFS-APPELLANTS

Certification of Compliance with Rules 30 and 31

DOCKET NUMBER 11 Dated June 22, 2023        A.1

JUDGEMENT Order      Dated June 22,2023        A.2

Case: 23-2408    Document: 6    Filed: 08/24/2023    Pages: 57

# A 1

Judgment in a Civil Case (02/11)

# UNITED STATES DISTRICT COURT
for the
Central District of Illinois

| | | |
|---|---|---|
| **MICHAEL HENRY** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case Number: 22-cv-3239** |
| | ) | |
| **JUDGE SOPHIA HALL**, *et al.,* | ) | |
| | ) | |
| **Defendant.** | ) | |

## JUDGMENT IN A CIVIL CASE

☐ **JURY VERDICT**.   This action came before the Court for a trial by jury.   The issues have been tried and the jury has rendered its verdict.

☒ **DECISION BY THE COURT**.   This action came before the Court, and a decision has been rendered.

   **IT IS ORDERED AND ADJUDGED** that Defendant Judges' Motion to Dismiss (Doc. 6) is GRANTED. The Clerk shall enter judgement and terminate the case.

**Dated: 6/22/2023**

s/ Shig Yasunaga
Shig Yasunaga
Clerk, U.S. District Court

# A 2

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

MICHAEL HENRY,                          )
                                        )
                                        )
        Plaintiff,                      )
                                        )
v.                                      )        Case No. 22-cv-3239
                                        )
JUDGE SOPHIA HALL, *et al.,*            )
                                        )
                                        )
        Defendants.                     )

## OPINION

**COLLEEN R. LAWLESS, U.S. District Judge:**

Before the Court is Defendants Judge Mary Jane Theis, Judge Mary Ellen Coughlan, Judge Michael B. Hyman, Judge Terrance J. Levin, Judge Aurelia Pucinski, Judge Timothy C. Evans, Judge Michael Nixon, Judge Sophia Hall, Judge Kenneth Wright, Jr., Judge Thomas W. Murphy, Judge Kerry M. Kennedy, Judge Mary Kathleen McHugh, and Judge Allen P. Walker's (hereinafter, "Defendant Judges") Motion to Dismiss. (Doc. 6, Def. Mot. Dismiss). For the following reasons, Defendant Judges' Motion to Dismiss is GRANTED.

## I.    PROCEDURAL HISTORY

On November 16, 2022, Plaintiff Michael Henry filed a complaint against Defendant Judges, pursuant to 42 U.S.C. § 1983. (Doc. 1, Pl. Complaint, 1). On December 20, 2022, Defendant Judges moved to dismiss Plaintiff's Complaint under Rule 12(b)(6) based on Plaintiff's failure to state a claim upon which relief may be granted, and under

Rule 12(b)(1) based on lack of subject-matter jurisdiction. (Doc 6, at 2). Alternatively, Defendants move to transfer this matter to the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. § 1404. (*Id.*).

## II.    FACTUAL ALLEGATIONS

Underlying this case is an ongoing state lawsuit in Cook County Case Number 2020 M5 00698. (Doc. 1, at 5). Village of Orland Park filed the lawsuit against Plaintiff alleging violations of the Illinois Municipal Code, the Village Code, and the U.S. Code. (Doc. 1, at 16-22). Defendant Judges in the instant case either presided over Plaintiff's case or were on the Appellate and Supreme Courts of Illinois during Plaintiff's case. (Doc. 1, at 1-3).

Plaintiff alleges that Defendant Judges ignored rulings made by the United States Supreme Court when the presiding trial court judges failed to dismiss the cause following what Henry believed to be a dispositive case—*Facebook, Inc. v. Duguid, et al.*, 141 S. Ct. 1163 (2021). (*Id.* at 6). As for the Appellate and Supreme Court judges, he alleges that they failed to oversee the implementation of the Supreme Court rulings (*Id.* at 6-8). Plaintiff also claims that the first judge to preside over his case, Judge Murphy, recused himself after someone claiming to represent Judge Murphy called Plaintiff and asked for a political donation. (*Id.* at 6). Plaintiff alleges that the caller indicated that the donation would help Plaintiff prevail in the underlying state case. (*Id.* at 6). Based on these allegations, Plaintiff filed the instant complaint based on a violation of his rights under 42 U.S.C. § 1983 and requested damages and the appointment of a special prosecutor to investigate Defendant Judges. (*Id.* at 11).

On December 20, 2022, Defendant Judges filed a Motion to Dismiss under Rule 12(b)(6) based on Plaintiff's failure to state a claim upon which relief may be granted, and under Rule 12(b)(1) based on lack of subject-matter jurisdiction. (Doc. 6, at 2). Specifically, Defendant Judges argue that the claim is not cognizable because equitable relief is not available under 42 U.S.C. § 1983. (*Id.* at 3-4). Further, Defendant Judges argue that they are entitled to judicial immunity in this case. (*Id.* at 4-6). Defendant Judges also argue that this Court lacks subject-matter jurisdiction based on the *Rooker-Feldman* doctrine and under the abstention doctrine. (*Id.* at 6-7). Alternatively, Defendant Judges move to transfer this matter to the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. § 1404 as it is more convenient for the parties. (*Id.* at 8-10).

In his Response, Plaintiff argues that despite having a mailing address in Illinois, he is a resident of Florida and requests that the venue be changed to the Middle District of Florida. (Doc. 7, Pl. Resp., 1). He further argues that the circuit court did not have jurisdiction in the underlying case due to Defendant Judges' failure to apply the Supreme Court case, and, therefore, the doctrine of judicial immunity does not apply. (*Id.* at 2). He also claims that Rule 12(b)(6) is an inappropriate vehicle to address qualified immunity claims. (*Id.* at 5). As to subject matter jurisdiction, Plaintiff asserts that diversity jurisdiction applies as he is a resident of Florida and "everyone of the Defendants is a resident of the State of Illinois." (*Id.* at 8).

## III.   DISCUSSION

### A. Legal Standard

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. *See Christensen v. Cnty. of Boone, Ill.*, 483 F.3d 454, 458 (7th Cir. 2007). When considering a motion to dismiss under Rule 12(b)(6), the court construes the complaint in the light most favorable to the plaintiff, accepting all well-pleaded allegations as true and construing all reasonable inferences in plaintiff's favor. *Christensen*, 483 F.3d at 458.

To state a claim for relief, a plaintiff need only provide a short and plain statement of the claim showing he is entitled to relief and giving defendants fair notice of the claims. *Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011). However, the complaint must set forth facts that plausibly demonstrate a claim for relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). A plausible claim is one that alleges factual content from which the Court can reasonably infer that defendants are liable for the misconduct alleged. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Federal Rule of Civil Procedure 12(b)(1) authorizes the dismissal of a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Like a Rule 12(b)(6) motion, the court must "accept as true all well-pleaded factual allegations and draw all inferences in favor of the plaintiff." *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007) (internal citation omitted). However, a plaintiff faced with a Rule 12(b)(1) motion to dismiss bears the burden of proving the jurisdictional requirements are met. *Kontos v. U.S. Dep't of Labor*, 826 F.2d 573, 576 (7th Cir. 1987) (the plaintiff "must

submit affidavits and other relevant evidence to resolve the factual dispute regarding the court's jurisdiction.").

While the Court recognizes *pro se* pleadings must be liberally construed, (*Haines v. Kerner*, 404 U.S. 519, 520 (1972)), even a *pro se* complaint must contain sufficient factual allegations to allege a deprivation of a constitutional or civil right. *See Palda v. General Dynamics Corp.*, 47 F.3d 872, 875 (7th Cir. 1995).

### B.   *Rooker-Feldman* Doctrine & *Younger* Abstention

Defendant Judges argue that the *Rooker-Feldman* doctrine bars this Court's consideration of Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction. (Doc. 6, at 6-7). The *Rooker-Feldman* doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The doctrine "essentially precludes lower federal court jurisdiction over claims seeking review of state court judgments." *Remer v. Burlington Area Sch. Dist.*, 205 F.3d 990, 996 (7th Cir. 2000). Specifically, it "bars federal jurisdiction when the federal plaintiff alleges that her injury was caused by a state court judgment." *Remer*, 205 F.3d at 996.

The threshold question for the applicability of the *Rooker-Feldman* doctrine is whether the plaintiff is a "state court loser." *Exxon*, 544 U.S. at 284. The doctrine applies only where "the losing party in state court filed suit in federal court *after the state proceedings ended* *** therefore, an interlocutory ruling does not evoke the doctrine or

preclude federal jurisdiction." *TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 591 (7th Cir. 2005) (emphasis in original) (internal quotations removed).

For example, in *Hadzi-Tanovic v. Johnson*, 62 F.4th 394, 400 (7th Cir. 2023), the Seventh Circuit reviewed whether a child custody order was final, given the district court's concern about the state court's continued management of child custody issues. Relying on Illinois Supreme Court Rule 304(b)(6), which permits appeals from a "custody or allocation of parental responsibilities judgment or modification of such judgment," the Seventh Circuit concluded that the plaintiff was a "state court loser" for the purposes of the *Rooker-Feldman* doctrine. *Hadzi-Tanovic*, 62 F.4th at 400.

Here, Plaintiff's claims are primarily based on an order denying his motion to dismiss his ongoing state case. (Doc. 1, at 3-4). Specifically, he argues that the presiding state court judges erred when denying his motion to dismiss because they did not adhere to what Henry believed to be a dispositive case—*Facebook, Inc. v. Duguid, et al.*, 141 S. Ct. 1163 (2021). (Doc. 1, at 6). However, the denial of Plaintiff's Motion to Dismiss is not a final order. As the case is still ongoing, Plaintiff cannot be considered the "state court loser" under the *Rooker-Feldman* doctrine. Therefore, that doctrine does not apply.

As an alternative, Defendant Judges also argue that this Court's jurisdiction is precluded under the *Younger* abstention doctrine. (Doc. 6, at 6-7). The *Younger* abstention doctrine prohibits federal courts from intervening in ongoing state proceedings. *Younger v. Harris*, 401 U.S. 37 (1971); *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 598 (1974) (recognizing the applicability of the *Younger* abstention doctrine to state civil proceedings). The "fundamental purpose" of the doctrine is "to prevent erosion of the role of the jury and

Case: 23-2408    Document: 6    Filed: 08/24/2023    Pages: 57

avoid a duplication of legal proceedings and legal sanctions where a single suit would be adequate to protect the rights asserted." *Younger*, 401 U.S. at 44. Thus, the Supreme Court has made clear that federal interference with state functions is discouraged. *Id.* at 44-46.

When determining whether the *Younger* abstention doctrine applies, the threshold question is whether the federal plaintiff's requested relief would interfere with an ongoing state proceeding. See *Mass. Delivery Ass'n v. Coakley*, 671 F.3d 33, 40 (1st Cir. 2012). Here, Plaintiff's claims would certainly disrupt the pending state proceeding as he is requesting this Court review the state court's ruling to determine whether "they all failed to follow the Law and ignored the Supremacy Clause of the Constitution." (Doc. 1, at 8). Additionally, Plaintiff seeks to challenge the state court's jurisdiction in his underlying case. (Doc. 7, at 2). The judgment Plaintiff seeks in this Court is necessarily "aimed at controlling or preventing the occurrence of specific events that might take place" during his state proceedings. See *O'Shea v. Littleton*, 414 U.S. 488, 500 (1974). Thus, the threshold requirement has been met.

The next inquiry is whether this case falls into the specific class of cases the *Younger* abstention doctrine applies to. The *Younger* abstention applies to exactly three classes of cases: (1) where federal jurisdiction would intrude into ongoing state criminal proceedings; (2) where federal jurisdiction would intrude into certain civil enforcement proceedings (judicial or administrative) akin to criminal prosecutions, or (3) where federal jurisdiction would intrude into civil proceedings that implicate a state's interest in enforcing the orders and judgments of its courts. *Sprint v. Communications, Inc. v. Jacobs*, 571 U.S. 69, 79 (2013). In *Huffman*, the Court held the abstention doctrine applied and

found the underlying civil nuisance action was akin to a criminal proceeding because the State was a party to the underlying proceeding and its interests were as important in that proceeding as they would be in a criminal prosecution. *Huffman*, 420 U.S. at 604.

Like the case in *Huffman*, the underlying state case against Plaintiff alleges a claim of nuisance. (Doc. 1, at 16-22). The Village has cited the important state interests of public safety, health, and welfare as reasons for initiating the action against Plaintiff. (Doc. 1, at 17). These are the same state interests that apply in a criminal proceeding. *Huffman*, 420 U.S. at 604. As such, Plaintiff's claim falls within the *Younger* abstention doctrine because it is a civil proceeding that implicates important state interests.

Further, there are no exceptional circumstances that exist that would make abstention inappropriate. *Stroman Realty, Inc. v. Martinez*, 505 F.3d 658, 662 (7th Cir. 2007). Even though Plaintiff has frustrations regarding the state court's interpretation of the Supreme Court's ruling, that is not an extraordinary circumstance that would warrant this Court's intervention. Even the Supreme Court acknowledged in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–16 (1923), that state courts will sometimes commit error when interpreting federal law. But even if the state court incorrectly decided constitutional issues, "no court of the United States other than [the Supreme Court] could entertain a proceeding to reverse or modify the judgment for errors of that character." *Rooker*, 263 U.S. at 415-16. Consequently, "no matter how wrong a state court judgment may be under federal law," this Court cannot review that ruling. *Sykes v. Cook County Circuit Court Prob. Div.*, 837 F.3d 736, 741 (7th Cir. 2016). Instead, Plaintiff's claim is more appropriately resolved in the Illinois Appellate Court, as appellate review provides an avenue for

addressing wrongs that occurred at the trial level. *See SKS & Associates, Inc. v. Dart*, 619

F.3d 674, 680 (2010) (noting that a federal court should assume that state procedures will

afford an adequate remedy, in the absence of unambiguous authority to the contrary).

Therefore, the Court finds abstention under *Younger* is appropriate in this case.

## C. Judicial Immunity

Defendant Judges have the burden of showing the doctrine of judicial immunity

applies in this case. *Burns v. Reed*, 500 U.S. 478, 486 (1991) (citing cases). Judicial immunity

shields a judge from suit, not just from liability for damages, and encompasses any

actions taken in the judge's official judicial capacity, meaning actions that are non-

ministerial and involve the exercise of discretionary judicial decision-making or implicate

a judge's role as a judge. *Dawson v. Newman*, 419 F.3d 656, 660–62 (7th Cir. 2005). Such

actions receive substantial protection: "[a] judge will not be deprived of immunity

because the action he took was in error, was done maliciously, or was in excess of his

authority; rather, he will be subject to liability only when he has acted in the 'clear absence

of all jurisdiction.'" *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978) (quoting *Bradley v.

Fisher*, 80 U.S. 335, 351 (1871)).

The Supreme Court has emphasized that judicial immunity is necessary because

"[i]f judges were personally liable for erroneous decisions, the resulting avalanche of

suits, most of them frivolous by vexations, would provide powerful incentives for judges

to avoid rendering decisions likely to provoke such suits," which would undermine the

goal of fair and impartial adjudication. *Forrester v. White*, 484 U.S. 219, 226-27 (1988).

Therefore, "the scope of the judge's jurisdiction must be construed broadly where the

issue is the immunity of the judge." *Stump*, 435 U.S. at 356. At the same time, the Court noted that most judicial mistakes—like misapplications of relevant cases—can be addressed through the ordinary appellate process. *Forrester*, 484 U.S. at 227.

The first requirement for immunity is met because issuing an order on a motion to dismiss is one of the "paradigmatic judicial acts involved in resolving disputes between parties who have invoked the jurisdiction of a court." *Forrester*, 484 U.S. at 227. Because Plaintiff's allegations against Defendant Judges arose directly out of their judicial capacity, Defendant Judges are entitled to absolute immunity from liability under 42 U.S.C. § 1983.

Notably, judicial immunity applies even to alleged acts of conspiracy or bribery. *Ashelman v. Pope*, 793 F.2d 1072, 1078 (9th Cir. 1986); *See Pierson v. Ray*, 386 U.S. 547, 553-54 (2006) ("[Judicial] immunity applies even when the judge is accused of acting maliciously and corruptly."). For example, in *Holloway v. Walker*, 765 F.2d 517, 521 (5th Cir. 1985), the plaintiff alleged that a judge may have acted pursuant to a bribe to rule against Holloway. In its analysis, the Fifth Circuit noted the "well-established rule that where a judge's absolute immunity would protect him from liability for the performance of particular acts, mere allegations that he performed those acts pursuant to a bribe or conspiracy will not be sufficient to avoid the immunity." *Holloway*, 765 F.2d at 522. The Fifth Circuit gave several explanations for this policy:

> It requires little skill or imagination to convert many allegations that a judge has ruled in 'bad faith' into allegations that he conspired to do so or was bribed; thus, the threat to disinterested decision-making is similar. An embittered, losing party is just as likely to allege bribery or conspiracy as any other malevolent motive of a judge. The possibility that judges will be driven to wasteful and distracting self-

> protective measures is just as great where liability could flow from conspiracy or bribery charges as from a charge of 'bad faith.' *** Finally, the threat to the finality of decision-making is the same where one alleges a judge conspired or was bribed to abuse his office as where one alleges he abused it in 'bad faith.' In summary, the need for a private right of action against a judge is no greater and the threat to the independence of judicial decision-making is no less where the allegations are of conspiracy or bribery than where the allegations are of bad faith, personal interest or outright malevolence. Thus, where the alleged harm, though resulting from a bribe or conspiracy, was inflicted by acts to which absolute immunity would apply, the complaint is insufficient to avoid judicial immunity.

*Id.* at 523. As such, the Fifth Circuit concluded that the judge was entitled to absolute immunity but noted that the judge would not be protected by immunity if the complaint had alleged harm that did not result from judicial acts. *Id.*

At this stage, this Court must accept all well-pleaded allegations as true and construe all reasonable inferences in plaintiff's favor. *Christensen*, 483 F.3d at 458. Aside from the claims regarding the motion to dismiss, Plaintiff also alleged that the first judge to preside over his case, Judge Murphy, recused himself after someone claiming to represent him called and asked Plaintiff for a political donation. (Doc. 1, at 6). Plaintiff alleges that the caller indicated that the donation would help him prevail in the underlying state case. (*Id.* at 6). Plaintiff indicated that Judge Murphy did not dismiss the case against Plaintiff, which Plaintiff claims was the reason why his rights were violated. (*Id.* at 3). Plaintiff therefore asked for a special prosecutor to be appointed to investigate defendants for "corruption and bribery solicitation." (*Id.* at 11).

Like *Holloway*, the harm alleged in the instant case is one that stems from a judicial act. Plaintiff does not assert that the alleged bribery solicitation resulted in a harm independent from the judicial act. In other words, Plaintiff has not demonstrated that

Judge Murphy acted outside of his judicial capacity. Therefore, applying the reasoning in *Holloway*, Judge Murphy is entitled to judicial immunity for the alleged acts. While this Court recognizes Plaintiff has concerns about judicial integrity there are other, more appropriate, avenues to address Plaintiff's concerns. *See Dennis v. Sparks*, 449 U.S. 24, 31 (1980).

Judicial immunity is not available in two circumstances: (1) when the actions at issue were nonjudicial, and (2) when the actions, though judicial in nature, are taken in the "complete absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 12 (1991). Plaintiff argues that the second exception applies in the instant case because the court lacked jurisdiction to hear the case as it did not enforce the Supreme Court's ruling in *Facebook, Inc. v. Duguid, et al.*, 141 S. Ct. 1163 (2021). (Doc. 1, at 3-7).

In support of his position, Plaintiff cites to *Elliot v. Piersol*, 26 U.S. 328, 340 (1828), for the proposition that if a court is "without authority, its judgments and orders are regarded as nullities. They are not voidable, but simply void." (Doc. 1, at 3). The *Elliot* Court held, "[w]here a court has jurisdiction, it has a right to decide every question that arises in the cause; and *whether the decision be correct or not*, its judgment until reversed is regarded as binding in every other court." *Elliot*, 26 U.S. at 329 (emphasis added). In other words, even when a court decides incorrectly, it does not lose jurisdiction over the case.

In this case, the state court did have subject matter jurisdiction because the case involved violations of the Illinois and Municipal codes. *See In re M.M.*, 156 Ill.2d 53, 65 (1993); IL Const. Art. 6, § 9. Plaintiff argues the court lost subject matter jurisdiction over the claim when it misapplied the relevant authority. (Doc. 1, at 3). A court does not lose

jurisdiction over a case simply because it issues an incorrect or unpopular decision. *See Elliot*, 26 U.S. at 329. Thus, the second exception to judicial immunity does not apply.

Finally, Plaintiff argues that dismissal based on immunity is not appropriate at this stage. (Doc. 7, at 4-7). Judicial, or absolute, immunity applies to functions "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). Absolute immunity rarely turns on questions of fact. *See Filler v. Kellett*, 859 F.3d 148, 152 (1st Cir. 2017) (collecting cases for the proposition that "absolute immunity, unlike qualified immunity, only rarely turns on questions of fact.").

A plaintiff is not required to allege facts to overcome affirmative defenses, although dismissal under Rule 12(b)(6) is proper if the complaint sets forth everything necessary to satisfy an affirmative defense. *Vergara v. City of Chicago*, 939 F.3d 882, 886 (7th Cir. 2019). In this case, there is enough evidence set forth to establish that the Defendant Judges are entitled to judicial immunity.

28 U.S.C. § 1915(e)(2) (2022), provides that: "[n]otwithstanding any filing fee, or any portion thereof that may have been paid, the court shall dismiss the case at any time if the court determines that ... (B) the action or appeal—(i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." Therefore, 28 U.S.C. § 1915(e)(2)(B), compels a court to dismiss a case, such as this, if the court determines that the action seeks monetary relief against a defendant who is immune from such relief. Judges defending against a claim under 42 U.S.C. § 1983 enjoy absolute immunity from damages liability for acts performed in their judicial capacities. *Dennis v. Sparks*, 449 U.S. 24, 27 (1980).

In this case, Plaintiff also seeks monetary relief in the sum of $1 million against each Defendant. (Doc. 1, at 11). As discussed, Defendant Judges are immune from this lawsuit as it falls within the scope of their judicial immunity which shields them from Plaintiff's request for monetary relief. *See Brunson v. Murray*, 843 F.3d 698, 710 (7th Cir. 2016). Therefore, under 28 U.S.C. § 1915(e)(2), Plaintiff's claim must be dismissed.

### D. Injunctive Relief

In addition to the requested monetary relief, Plaintiff requests the appointment of a special prosecutor to investigate Defendant Judges. (Doc. 1, at 11). Defendant Judges argue that the injunctive relief requested is not available to Plaintiff, so his claim must be dismissed. (Doc. 6, at 3-4).

Injunctive relief is barred in any Section 1983 action "against a judicial officer for an act or omission taken in such officer's judicial capacity ... unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983. Certainly, the basis for Plaintiff's claims—the rulings on the motion to dismiss-- are judicial acts. Therefore, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. 42 U.S.C. § 1983.

Plaintiff's Complaint does not allege that "a declaratory decree was violated or that declaratory relief was unavailable." Indeed, declaratory relief against a judge for actions taken within his or her judicial capacity is ordinarily available by appealing the judge's order. *Ashmore v. Prus*, No. 13–CV–2796, 2013 WL 3149458, at *4 (E.D.N.Y. June 19, 2013), *citing LeDuc v. Tilley*, No. 05–CV–157, 2005 WL 1475334, at *7 (D.Conn. June 22,

Case: 23-2408   Document: 6   Filed: 08/24/2023   Pages: 57

2005) (collecting cases). Plaintiff has not demonstrated that he is unable to appeal any final judgment issued by the Defendant Judges.

Moreover, Plaintiff cannot show that the risk of injury to him is great and immediate, such that injunctive relief is necessary. *See O'Shea v. Littleton*, 414 U.S. 488, 499 (1974)) (noting that to obtain injunctive relief, a plaintiff must show that he has no adequate remedy at law and will suffer irreparable injury without the requested relief). Plaintiff has an adequate remedy at law: he can appeal the state court decisions through the normal state appellate process. To the extent Plaintiff wishes to challenge the overall conduct of the Defendant Judges, he maintains the ability to pursue available disciplinary proceedings. Therefore, he is not entitled to injunctive relief.

Accordingly, Plaintiff's claims for injunctive relief are also dismissed.

**E.  Change of Venue**

Based on the Court's dismissal under Rule 12(b)(6), both parties' requests for a change of venue are denied as moot.

**IV.    CONCLUSION**

For all of these reasons, Defendant Judges' Motion to Dismiss (Doc. 6) is GRANTED. The Clerk shall enter judgment and terminate the case.

ENTER: June 22, 2023

COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE